**WYOMING NATIONAL ABORTION RIGHTS ACTION LEAGUE; Wyoming National Organization for Women; Jane Courage; Dr. Brent A. Blue; Dr. Jacques Roux; Sharon Breitweiser; Rebecca L. Archer; Lori Bowdler; and Rev. Warren Murphy, Appellants (Plaintiffs),**

v.

**Kathy KARPAN, Secretary of State, State of Wyoming; Unseen Hands Prayer Circle Political Action Committee; Kathy Helling; Richard R. Larson; and Alan C. Stauffer, Appellees (Defendants).**

**PLANNED PARENTHOOD OF WYOMING; Campbell County Voices for Choice; Carbon County Coalition for Choice; Converse County Coalition for Choice; Fremont County Pro–Choice Network; Teton County Coalition for Choice; and Cindy Chace, Appellants (Plaintiffs),**

v.

**Kathy KARPAN, Secretary of State, State of Wyoming, Appellee (Defendant).**

Nos. 94–8, 94–9.

Supreme Court of Wyoming.

Oct. 31, 1994.

Kate M. Fox of Burgess, Davis & Cannon, Cheyenne, Kathryn Kolbert and Simon Heller, The Center for Reproductive Law & Policy, New York City, for appellant Wyoming Nat. Abortion Rights Action League.

Robert M. Shively of Murane & Bostwick, Casper, Roger Evans and Carole Chervin, Planned Parenthood Federation of America, New York City, for appellant Planned Parenthood of Wyoming.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Rowena L. Heckert, Sr. Asst. Atty. Gen., for appellee Kathy Karpan, Secretary of State, State of Wyo.

Richard H. Honaker of Honaker, Hampton & Newman, Rock Springs, for appellee Unseen Hands Prayer Circle Political Action Committee, Richard R. Larson, and Alan C. Stauffer.

Richard L. Williams and Barry G. Williams of Williams, Porter, Day & Neville, Casper, for appellee Kathy Helling.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (Retired).

For Majority Opinion See 881 P.2d 281.

CARDINE, Justice, Retired, dissenting.

I agree with the law and statements of the court in this opinion in all respects save one. I cannot agree that an initiative, unconstitutional in all its provisions except a minor and insignificant part, and having a clear purpose and thrust that is unconstitutional, can be forced upon the ballot at great expense only to later be declared unconstitutional and invalid. Therefore, I dissent.

The initiative before the court:

(a) defines an "unborn child" as a mother's fertilized egg from the instant of conception;

(b) defines "pregnant" as having a fertilized egg in the mother's body;

(c) states that no person shall cause the abortion of a fertilized egg; and

(d) prohibits a woman from electing to abort a fertilized egg even the day after conception.

I would hold, first, that the ballot initiative violated the constitutional and statutory requirements for clarity and as a consequence is deceptive to voters. Secondly, I would hold that the initiative should be stricken from the ballot because it contains a misleading title. The initiative title inaccurately expresses the entire subject of the bill, in violation of both Wyoming Constitution Art. 3, § 24 and W.S. 22–24–105 (1992). The short title of the initiative before the court is the "Wyoming Human Life Protection Act." The full title is:

AN ACT to amend W.S. 35–6–101, 35–6–102, 35–6–106, 35–6–107(a)(v) and by creating a new paragraph (vii), and 35–6–117 relating to abortions; specifying when abortions may be performed and providing for affirmative defenses; providing definitions; providing procedures; specifying when appropriated funds may be used for abortions; and providing for an effective date.

To fairly apprise voters of the purposes and effect of the initiative, it might better state something as

to prohibit abortion in all instances and at all times except those involving a reported sexual assault or incest or where the woman's life is in danger.

What may be equally as deceptive in the initiative is the provision by definition that a fertilized egg is a "child," albeit an "unborn child," but nevertheless a child. The deception then results from the repeated use thereafter of the term "unborn child" which sounds more like a viable fetus rather than an egg at the moment of conception which can be seen only under a microscope.

For more than a thousand years the debate has raged among lawmakers, churches and citizens over abortion. At one end of the spectrum is the position presented by this initiative, *i.e.*, that a child exists at the instant of conception. At the other end are those who claim a child exists only when it begins to live and breathe outside the womb.

The United States Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) found a middle ground by declaring a right of privacy that, before viability of the fetus, belonged to the pregnant woman and, after viability, was subject to regulation by the State. Thus, the United States Supreme Court stated, in recounting the facts in *Roe:*

Texas urges that, apart from the Fourteenth Amendment, life begins at conception and is present throughout pregnancy, and that, therefore, the State has a compelling interest in protecting that life from and after conception.

410 U.S. at 159, 93 S.Ct. at 730. The claim of Texas was identical to the claim of initiative proponents in this case. The Court then said:

[W]e do not agree that, by adopting one theory of life, Texas may override the rights of the pregnant woman that are at stake. * * *

\* \* \* \* \* \*

With respect to the State's important and legitimate interest in potential life, the "compelling" point is at viability. This is so because the fetus then presumably has the capability of meaningful life outside the mother's womb. State regulation protective of fetal life after viability thus has both logical and biological justifications.

410 U.S. at 162–63, 93 S.Ct. at 731–32. The decision then provided that the pregnant woman could elect abortion of the fertilized egg during the first three months of pregnancy and that the State could regulate the abortion procedure after the first three months even proscribing abortion after viability except for the instance of preservation of the life or health of the mother.

In *Planned Parenthood v. Casey*, —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the United States Supreme Court reaffirmed the essential holding of *Roe v. Wade*, stating:

It must be stated at the outset and with clarity that *Roe's* essential holding, the holding we reaffirm, has three parts. First is a recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirma-

tion of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger a woman's life or health. And third[,] * * * the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child.
— U.S. at ——, 112 S.Ct. at 2804. It cannot be disputed that constitutional law today provides that a fertilized egg may be aborted before viability. Neither can it be disputed that the primary and major thrust of this initiative is to enact a law that would prohibit, before viability, the abortion of a fertilized egg, a law that would be unconstitutional. That this initiative cannot be used for the purpose of enacting an unconstitutional law is also beyond dispute. Thus, our Wyoming Constitution provides as follows:

The initiative shall not be used to * * * **enact that prohibited by the constitution** for enactment by the legislature.

Article 3, § 52(g) (emphasis supplied). The legislature could not enact the essential, main provisions of this initiative into law.

[T]he constitution of the United States is the supreme law of the land.

Article 1, § 37;

All power is inherent in the people[.]

Article 1, § 1;

Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

Article 1, § 7; and

The legislature shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise.

Article 6, § 13.

Our court, in its opinion, holds in concert with Florida and South Carolina that an initiative must be unconstitutional in *toto* before it would be removed from the ballot. Thus, the Wyoming Supreme Court states in this case:

Under our constitution, and the federal constitution as interpreted, there are aspects of the Wyoming Human Life Protection Act that are constitutional. * * * It follows that it should be included on the 1994 general election ballot and voted upon by the people.

881 P.2d at 289. The essence and primary purpose of the initiative is to prevent abortion from the time of conception. I would hold that where the main object and purpose of an initiative is to enact that which is unconstitutional, it should not be allowed on the ballot. To hold otherwise is to permit proponents of an initiative to always qualify an unconstitutional initiative for the ballot by including in the initiative a "throw away," insignificant part, not necessary to the primary thrust of the initiative. I recognize that this suggested disposition will involve the court weighing and scrutinizing each initiative that contains unconstitutional provisions, but then that is often the business of a court.

I dissent and would hold the initiative should not go on the ballot.